Carlos F. Osorio (*pro hac vice admission*)
Florida Bar No. 597546
cosorio@osorioint.com
Andres F. Rey (*pro hac vice admission*)
Florida Bar No. 118875
arey@osorioint.com
**OSORIO INTERNACIONAL, P.A.**
175 S.W. 7 Street, Suite 1800
Miami, FL 33130
Tel: 305-900-4103

George J. Vila (*pro hac vice admission*)
Florida Bar No. 141704
gvila@gjvpa.com
**GEORGE J. VILA, P.A.**
201 Alhambra Circle, Suite 702
Coral Gables, FL 33134-5111
Tel: 305-445-2540

Monte S. Travis (CA Bar No. 84032)
montetravis@mac.com
Robert P. Travis (CA Bar No. 182667)
robert.p.travis@icloud.com
**TRAVIS & TRAVIS**
1160 Battery Street East, Suite 100
San Francisco, CA 94111-1231
Tel: 415-939-0576

Attorneys for Plaintiff
Francesco Corallo

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANISCO DIVISION

| | |
|---|---|
| FRANCESCO CORALLO,<br><br>Plaintiff,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, Q CYBER TECHNOLOGIES LIMITED, and APPLE, INC.,<br><br>Defendants. | Case No. 3:22-cv-05229-RS<br><br>**PLAINTIFF'S RESPONSE TO APPLE INC.'S MOTION TO DISMISS**<br><br>**JUDGE: Hon. Richard Seeborg** |

-1-

Plaintiff FRANCESCO CORALLO ("**Corallo**") hereby files this Response to the Motion to Dismiss filed by Defendant APPLE, INC., and states as follows:

## I.      BACKGROUND

Plaintiff filed this action on September 13, 2022 against Defendants NSO GROUP TECHNOLOGIES LIMITED ("**NSO**") and Q CYBER TECHNOLOGIES LIMITED ("**Q Cyber**") (collectively the "**NSO Defendants**") and Defendant APPLE, INC. ("**Apple**") for damages and injunctive relief pursuant to the Alien Tort Claims Act, 28 U.S.C. § 1350, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and for California state law claims for invasion of privacy, civil conspiracy, negligence, California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, California's False Advertising Law, Cal. Bus. and Prof. Code, §§ 17500, *et seq.,* and intentional inflict of emotional distress.  In particular, this action seeks redress for NSO Defendants' torts in violation of the law of nations and international law from their systematic abuse of human rights, targeting, harassment, persecution, intentional infliction of emotional distress, invasion of privacy, as well as other offensive and actionable conduct.  This action also raises claims for violations of federal and state law arising out of the NSO Defendants' egregious, deliberate, and intentional hacking of Corallo's Apple iPhone device and iCloud account through the use of surveillance technology or "spyware," including NSO Defendants' Pegasus spyware and FORCEDENTRY security exploit (used to deploy NSO Defendants' Pegasus spyware onto the Apple user's devices).  Plaintiff also seeks damages against Apples for its negligence in failing to (1) warn (2) prevent and/or (3) adequately and reasonably defend against the hacking by NSO Defendants despite Apple's knowledge that NSO Defendants were actively targeting its customers with their malware and spyware and other surveillance technology, and for falsely advertising its ability to prevent such cyberattacks.

## II.     ARGUMENT AND CITATIONS TO AUTHORITY

### A.      Rule 12(b)(6) Standard

-2-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Historically, the courts view Rule 12(b)(6) motions with disfavor. *See Wilson v. PFS LLC, 06CV1046WQH(NLS)*, 2006 WL 3841517, at *2 (S.D. Cal. Nov. 2, 2006) ("A motion to dismiss pursuant to Rule 12(b)(6) is viewed with disfavor and rarely granted."); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997)). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663. This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted) ("[A]ll civil complaints must contain more than an unadorned, the defendant-unlawfully-harmed-me-accusation."). When evaluating a complaint on a motion to dismiss, the Court must take all of the well-pled factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In determining whether a complaint states a claim on which relief may be granted, "all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant." *Leakas v. Monterey Bay Military Hous., LLC*, 22-CV-01422-VKD, 2022 WL 2161608, at *4 (N.D. Cal. June 15, 2022); *Doe v. Regents of Univ. of California*, 21-CV-09605-LB, 2022 WL 833627, at *2 (N.D. Cal. Mar. 20, 2022); *see also Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (on a motion to dismiss the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff").

Ultimately, in consideration of a motion to dismiss, it is not whether a plaintiff will prevail in the matter but "whether the claimant is entitled to offer evidence to support the claims asserted."

-3-

1   *Plumleigh v. City of Santa Ana*, 754 F. Supp. 2d 1201, 1204 (C.D. Cal. 2010) (citation omitted);

2   *Boudreaux v. Cate*, 214CV0997GEBDBP, 2017 WL 495675, at *7 (E.D. Cal. Feb. 6, 2017), *report*

3   *and recommendation adopted*, 214CV0997GEBDBP, 2017 WL 915529 (E.D. Cal. Mar. 8, 2017)

4   (citation omitted) ("Defendants' position on the merits of plaintiff's claims may ultimately prove

5   to be correct.  However, on a motion to dismiss, '[t]he issue is not whether a plaintiff will

6   ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

7   Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but

8   that is not the test.'").  While the plausibility standard is not "akin to a 'probability requirement,'"

9   there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully."

10  *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that

11  are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

12  and plausibility of 'entitlement to relief' '" *Id.* (*quoting Twombly*, 550 U.S. at 557).

13          If a defect can be cured by an amendment, leave to amend should be freely granted.

14  *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Clifton v. United States Dep't of Justice*,

15  121CV00089DADEPG, 2022 WL 2791355, at *3 (E.D. Cal. July 15, 2022) (*citing Cook, Perkiss*

16  *and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)) ("To the extent

17  that the pleadings can be cured by the allegation of additional facts, courts will generally grant

18  leave to amend.").

19          **B.      Plaintiff Has Alleged a Viable Claim for Negligence.**

20                  *1.      The Economic Loss Rule does not apply and does not defeat Plaintiff's*
                            *negligence claim (and Plaintiff is not required to allege a "special*
                            *relationship") because Plaintiff's has not merely alleged purely economic*
                            *damages.*

21          Apple argues that the economic loss rule bars Corallo's negligence claim.  "The economic

22  loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to

-4-

contract damages." *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009).  Under California's economic loss rule, "purely economic losses are not recoverable in tort." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021); *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922, 505 P.3d 625, 632 (2022), reh'g denied (June 1, 2022) ("In general, there is no recovery in tort for negligently inflicted "purely economic losses," meaning financial harm unaccompanied by physical or property damage.").  "The economic loss rule, in summary, 'is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement.'" *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012) (citation omitted); *Bass*, 394 F. Supp. 3d at 1039 (citation omitted) ("Put simply, 'the economic loss rule prevent[s] the law of contract and the law of tort from dissolving one into the other.'"). "In the absence of (1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule, recovery of purely economic loss is foreclosed." *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 Fed. Appx. 603, 605 (9th Cir. 2008) (*citing J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60, 62–63 (1979)).

Apple wrongly argues that Plaintiff only seeks economic damages, and ignores the broader allegations in the Complaint that make clear that Plaintiff not only suffered economic loss, but also incurred other non-economic losses, including among other things, the expenditure of time and resources to investigate and remediate harm done by Defendants' conduct, suffered invasion of privacy, damage to Plaintiff's reputation, and damage to the relationships and goodwill of Plaintiff's businesses, and emotional distress.  *See* Complaint, ¶ 34 ("Corallo has had his human rights violated in contravention of the law of nations and international law by NSO Defendants in

their systematic targeting, harassment, persecution, intentional infliction of emotional distress, invasion of privacy, and data hacking, as well as other offensive and actionable tortious conduct."), ¶ 35 ("Such actions include, but are not limited to, acts of hacking Corallo's iPhone utilizing NSO Defendant technology, supervision, orchestration, data collection, and data distribution."); ¶ 56 ("The intentional actions aforementioned of invasion of privacy have harmed Corallo in an amount to be proven at trial, and which may allow him to claim punitive damages due to their egregious conduct."); ¶ 80 ("NSO Defendants' actions caused Plaintiff to incur losses and other economic damages, including, among other things, the expenditure of resources to investigate and remediate NSO Defendants' conduct, damage to Plaintiff's reputation, and damage to the relationships and goodwill of Plaintiff's businesses. Plaintiff has been damaged in an amount to be proven at trial."); Count V "Wherefore Clause" ("WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Apple **for all damages suffered by Plaintiff**, including compensatory damages, punitive damages, interest, attorney's fees and costs, **and any other remedies (monetary and/or equitable) allowable by law as a result of Apple's negligent conduct.**"; *see also* ¶¶ 1-7, 51, 81, Count III – Invasion Of Privacy California State Law (Against NSO Defendants), ¶¶ 68-74, Count VIII – Intentional Inflict Of Emotional Distress California State Law (Against NSO Defendants), ¶¶ 105-109.

Courts in California have found that the economic loss doctrine does not apply where such allegations noted above have been alleged. *See e.g., In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d at 1142 (emphasis added) ("Plaintiffs have not alleged merely economic injury. Rather, they have alleged a **privacy injury** stemming from the unauthorized sharing of their private medical information. . . . They have further alleged injuries such as **anxiety, concern, and unease**. . . . And they have alleged that they **spent many hours responding** to the data breach."); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 654 (N.D. Cal. 2020) (emphasis added) ("This Court

previously held that the economic loss rule did not bar Plaintiff's negligence claim because she alleged **loss of time as a harm**, meaning she had not alleged pure economic loss."); *Stasi v. Inmediata Health Group Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020) (emphasis added) ("**[T]ime spent responding** to a data breach is a non-economic injury, that when alleged to support a negligence claim, defeats an economic loss doctrine argument."); *Bass*, 394 F.Supp. 3d at 1039 (emphasis added) ("Here, Plaintiffs have alleged they have **lost time responding** to the Breach as well as **suffering from increased anxiety** and so do not allege purely economic losses. . . . The economic loss rule therefore does not apply."); *In re Solara Medical Supplies, LLC Customer Data Security Breach Litig.*, ——— F.Supp.3d ———, ———, 2020 WL 2214152, at *4 (S.D. Cal. May 7, 2020) (emphasis added) (finding the economic loss doctrine does not apply because "[p]laintiffs have alleged they have **lost time responding** to the Breach as well as **suffering from increased anxiety** and so do not allege purely economic losses"); *see also Flores-Mendez v. Zoosk, Inc.*, C 20-04929 WHA, 2021 WL 308543 (N.D. Cal. Jan. 30, 2021) ("[P]laintiffs adequately allege damages in the form of a heightened risk of future identity theft, loss of privacy with respect to highly sensitive information, loss of time, and risk of embarrassment."). The economic loss rule therefore does not apply.

Finally, Apple also argues that Plaintiff fails to allege any "special relationship" between himself and Apple to avoid application of the economic loss rule. Under California law. the economic loss rule does not prevent recovery in tort if a "special relationship" exists between the plaintiff and the defendant. *See J'Aire Corp*, 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60, 63 (1979); *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16, 19 (1958).

As noted above, Plaintiff alleges more than just purely economic damages, and as such, California's economic loss rule simply does not apply to Plaintiff's negligence claim, and Plaintiff is not required to allege the special relationship exception to the economic loss doctrine set forth

-7-

in *J'Aire*.  Indeed, the allegations noted above make clear that Plaintiff has not merely alleged an economic injury as Apple claims, but has alleged other damages, including the expenditure of time and resources to investigate and remediate Defendants' conduct, damages for invasion of privacy, emotional distress, damage to Plaintiff's reputation, and damage to the relationships and goodwill of Plaintiff's businesses, that are not subject to the application of the economic loss rule.  *See* Complaint, ¶¶ 34-35, 56, 80; *see also id.* at ¶¶ 1-7, 51, 81, Count III – Invasion of Privacy California State Law (Against NSO Defendants), ¶¶ 68-74, Count VIII – Intentional Inflict of Emotional Distress California State Law (Against NSO Defendants), and ¶¶ 105-109.  At this stage of the proceedings (where the Court must accept Plaintiff's allegations as true on a motion to dismiss), the economic loss doctrine therefore does not apply to the alleged facts and does not defeat Plaintiff's negligence claim.  Nor is there a requirement to allege a special relationship between the parties given that the economic loss rule is inapplicable to the facts in this case.  The Court should therefore deny Apple's motion to dismiss Plaintiff's negligence claim based on the economic loss rule.

> **2.      *Plaintiff Has Adequately Alleged All Elements for a Claim of Negligence***

In addition to the economic loss rule, Apple argues that Plaintiff's negligence claim fails for three other reasons: (1) Plaintiff fails plausibly to allege the existence of a duty; (2) Plaintiff fails to allege Apple breached any duty; and (3) Plaintiff has not sufficiently alleged that Apple caused him harm.

Under California law, the elements of any negligence cause of action are:  (1) duty, (2) breach of duty, (3) proximate cause, and (4) damages.  *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 895 (N.D. Cal. 2014) (*citing Wells Fargo Bank, N.A. v. Renz*, 795 F.Supp.2d 898, 924–25 (N.D.Cal.2011)); *Peredia v. HR Mobile Services, Inc.*, 236 Cal. Rptr. 157, 162 (Ct. App. 2018).  "The existence of a legal duty to use reasonable care in a particular factual

-8-

situation is a question of law for the court to decide.  However, the elements of breach of that duty and causation are ordinarily questions of fact for the jury's determination." *Vasquez v. Residential Investments, Inc.*, 12 Cal. Rptr. 3d 846, 852 (Ct. App. 2004) (citations omitted).  Moreover, "the amount of recoverable damages is usually a question of fact, which is a determination not properly before the court on a motion to dismiss, [although] the measure of damages, existence of damages, and whether a plaintiff has sufficiently pled a causal connection between the damage and the alleged harm is a question of law." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 969 (S.D. Cal. 2014), order corrected, 11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014) (citations omitted).

### a.   Plaintiff has plausibly alleged the existence of a duty.

Under California law, "[a] duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties." *Cisco Sys., Inc.*, 77 F. Supp. 3d at 895.  Absent certain circumstances, "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." Cal. Civ. Code § 1714; *see also Rowland v. Christian*, 69 Cal. 2d 108, 112, 70 Cal.Rptr. 97, 443 P.2d 561 (1968).

"Defendants who undertake an affirmative course of conduct affecting the interests of another are regarded as assuming a duty to act and must do so with care, as they will be held liable for negligent acts or omissions." *Cisco Sys., Inc.*, 77 F. Supp. 3d at 895 (*citing Rickley v. Goodfriend*, 212 Cal.App.4th 1136, 1156, 151 Cal.Rptr.3d 683 (2013)). Where a voluntary undertaking gives rise to a duty of care, the scope of such duty depends upon the nature of the undertaking. *Id.* (*citing Elsheref v. Applied Materials, Inc.*, 223 Cal.App.4th 451, 462, 167 Cal.Rptr.3d 257 (2014)); *see also Delgado v. Trax Bar & Grill*, 36 Cal.4th 224, 249, 30 Cal.Rptr.3d 145, 113 P.3d 1159 (2005)).

1
2
3
4
5
6
7
8
9

Here, the Complaint states a "classic negligence claim."  In particular, Plaintiff alleges that Apple failed to comply with a "duty to Plaintiff to protect all data of the cloud storage including sensitive material of Plaintiff."  Complaint, ¶ 82.  For example, "Apple failed to prevent and/or adequately and reasonably defend against the hacking by NSO Defendants despite Apple's knowledge that NSO Defendants were actively targeting its customers with their malware and spyware and other surveillance technology, and for falsely advertising its ability to prevent such cyberattacks."  *Id.* at ¶ 83.  In turn, this breach plausibly caused the harm to Plaintiff resulting in alleged damages.  *Id.* at ¶¶ 84-86.

10
11
12
13
14
15
16
17
18

Apple apparently and shockingly argues that it does not owe its users a duty of care. According to Apple, "[m]issing from the[] allegations [in the Complaint] are any assertions that Apple had an ongoing legal duty to protect Plaintiff's data."  Motion to Dismiss, p. 11.  Apple asserts that Plaintiff "seeks to impose a limitless duty on technology manufacturers that amounts to a form of absolute liability for unlawful third-party hacks by even the most highly sophisticated hackers". *Id.* at p. 10.  Apple argues that there is no such duty and that Plaintiff's allegations "fall squarely under the holding in *Pirozzi v. Apple Inc.*, 913 F. Supp.2d 840 (N.D. Cal. 2012), which forecloses his claim."  *Id.*

19
20
21
22
23
24
25
26
27

In *Pirozzi*, the plaintiff brought a putative class action against Apple for failing to prevent third-party software applications distributed through its online App Store from uploading user information from their mobile devices without permission.  *See* 913 F. Supp. 2d at 844.  The plaintiff's negligence claim did not specify the particular duty breached, but her opposition argued that "Apple owed a duty to Plaintiff to protect her personal information and data, and to take reasonable steps to protect her from the wrongful taking of her personal information and the wrongful invasion of her privacy."  *Id.* at 851.  Apple argued in *Pirozzi* that it owed no legal duty to the plaintiff to protect her personal information from misappropriation by third-party App

28

-10-

developers.  *Id.* at 851.  *Pirozzi* relied heavily on *In re iPhone Application Litig.*, 11-MD-02250-LHK, 2011 WL 4403963, at *9 (N.D. Cal. Sept. 20, 2011), which "held that these allegations failed to allege an independent legal duty on the part of Apple to protect users' personal information from third-party App developers," and dismissed the negligence claim without prejudice with leave to amend, finding in particular that Plaintiffs had "not yet adequately pled or identified a legal duty on the part of Apple to protect users' personal information from third-party app developers."  *Id.* at 852.

Contrary to Apple's assertions, the facts in *Pirozzi*, a case decided in 2012, are inapposite. Unlike the plaintiff in *Pirozzi*, Corallo in this case has sufficiently articulated a legal duty that was breached by Apple, namely a failure by Apple to protect Plaintiff against NSO Defendants' hacking activities which Apple knew about and failed to take adequate steps to address.  As alleged, "Apple's negligence [was] in failing to (1) warn (2) prevent and/or (3) adequately and reasonably defend against the hacking by NSO Defendants despite Apple's knowledge that NSO Defendants were actively targeting its customers with their malware and spyware and other surveillance technology, and for falsely advertising its ability to prevent such cyberattacks." Complaint,  ¶ 5.  Plaintiff is not seeking to "impose a limitless duty" on Apple; rather, Plaintiff simply maintains that Apple had a **legal duty to use reasonable care to protect Plaintiff from hacking**, especially from hacking by NSO Defendants given Apple's prior history of encounters with NSO Defendants and that they were on notice of their hacking capabilities and actions.

In *Bass*, 394 F. Supp. 3d 1024, a more recent case in 2019 (seven years after *Pirozzi*), the plaintiff (a social media network user) brought a putative class action alleging that Face Book, Inc., the social media operator, had inadequately safeguarded its users' personal information.  *See* 394 F. Supp. 3d at 1033.  The court in *Bass* held that negligence had been plausibly alleged.  *Id.*

at 1038.  In finding that the plaintiff had met his obligation to plausibly plead duty of care, the

court in *Bass* explained:

> California courts consider several factors when deciding whether a duty of care
> exists, including "the foreseeability of harm to the plaintiff, the degree of certainty
> that the plaintiff suffered injury, the closeness of the connection between the
> defendant's conduct and the injury suffered, the moral blame attached to the
> defendant's conduct, the policy of preventing future harm, the extent of the burden
> to the defendant and the consequences to the community of imposing a duty to
> exercise care with resulting liability for breach, and the availability, cost, and
> prevalence of insurance for the risk involved." *Regents of Univ. of Cal. v. Superior
> Court*, 4 Cal. 5th 607, 628, 230 Cal.Rptr.3d 415, 413 P.3d 656 (2018) (*quoting
> Rowland v. Christian*, 69 Cal. 2d 108 113, 70 Cal.Rptr. 97, 443 P.2d 561 (1968)).
> These factors "must be evaluated at a relatively broad level of factual generality."
> *Ibid.* (quotation omitted).
>
> **These factors have been satisfied here. The lack of reasonable care in the
> handling of personal information can foreseeably harm the individuals
> providing the information. Further, some of the information here was private,
> and plaintiff plausibly placed trust in Facebook to employ appropriate data
> security. From a policy standpoint, to hold that Facebook has no duty of care
> here "would create perverse incentives for businesses who profit off the use of
> consumers' personal data to turn a blind eye and ignore known security risks."**
> *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1325
> (N.D. Ga. 2019) (Judge Thomas Thrash).

*Bass*, 394 F. Supp. 3d at 1039 (emphasis added).

Applying these principles here, it is apparent that Plaintiff has met his obligation to

plausibly plead that Apple had a duty of care to protect his personal and business information from

NSO Defendants' illicit hacking activities.  As noted above, Plaintiff alleges he lost time

responding to NSO Defendants' hack and that he suffered privacy damages and emotional distress.

*See* Complaint, ¶¶ 34-35, 56, 80; *see also id.* at ¶¶ 1-7, 51, 81, Count III – Invasion of Privacy

California State Law (Against NSO Defendants), ¶¶ 68-74, Count VIII – Intentional Inflict of

Emotional Distress California State Law (Against NSO Defendants), and ¶¶ 105-109.   Moreover,

it was no doubt foreseeable that these alleged harms would result from NSO Defendants' hacking

activities, especially given that Apple had a history with NSO Defendants and were on notice of

-12-

their nefarious actions.  *See* Complaint, ¶ 48 ("The potential for a cyberattack on Apple's customers by NSO Defendants was known or should have been known by Apple. Prior to the hacking incident by NSO Defendants in this case, Apple had already experienced hacking incidents involving NSO Defendants and was well aware that its devices and iCloud storage accounts were highly susceptible to hacking by NSO Defendants. Apple's knowledge of the threat posed by NSO Defendants and the extent of the data breach capabilities (and the harm already inflicted on Apple and its customers) is highlighted in the separate lawsuit brought by Apple against NSO Defendants. See Apple Complaint."); *id.* at ¶ 49 ("Despite actual knowledge of NSO Defendants' hacking capabilities and their actual past cyberattacks directed towards Apple and its customers, prior to the hacking incident by NSO Defendants in this case, Apple did not warn Corallo that he was a target of NSO Defendants' hacking campaign or that their products and services were highly susceptible to hacking by NSO Defendants.").  Indeed, it is reasonable to infer that persons whose information was compromised by NSO Defendants, like Plaintiff's personal and business confidential information, at the very least, spend some time and/or effort to deal with the data breach and detect or prevent identity theft, among other time-consuming measures.

In addition, as the court in *Bass* recognized, the issue is also matter of public policy.  *See Bass*, 394 F. Supp. 3d at 1039 ("From a policy standpoint, to hold that Facebook has no duty of care here "would create perverse incentives for businesses who profit off the use of consumers' personal data to turn a blind eye and ignore known security risks.").  This sentiment was more recently emphasized by the court in *Stasi* in connection with a lawsuit involving a data breach of medical information:

> **[I]mposing a common law duty on companies that possess personal and medical information to safeguard that information further promotes a policy, statutorily recognized, of preventing identity theft and protecting the**

-13-

**confidentiality of medical information.** Finally, the burden of imposing a common law duty to protect medical and personal information is not likely high given that both state and federal law already require such protection, and, in the case of state law, already allows for a private right of action. In the context of this case, the burden appears especially light given Inmediata's position that an "errant webpage setting" was the culprit. . .

Overall, it is reasonably foreseeable that a company that possesses medical information for thousands of people would cause those people time and effort upon learning that information had been freely accessible on the internet. Accordingly, Plaintiffs plausibly allege breach of duty.

*Stasi*, 501 F. Supp. 3d at 915 (citations omitted and emphasis added).

This is precisely the scenario here. As alleged, Apple failed to exercise reasonable care in the protection of Plaintiff's information, even after having full knowledge of NSO Defendants' capabilities and their nefarious activities, which ultimately resulted in an unlawful invasion of Plaintiff's iPhone and iCloud, products provided by Apple, and the unauthorized access (an invasion of privacy) to Plaintiff's confidential personal and business information.

> **b.      Plaintiff has plausibly alleged that Apple breached a duty and that Apple's breach caused him harm.**

As backup arguments, Apple next argues that Plaintiff failed to allege that Apple breached any duty, and that Plaintiff has not sufficiently alleged that Apple caused him damage. Apple argues that "Plaintiff in fact pleads himself out of any plausible theory of breach by alleging that (at the very least) Apple acted reasonably: Apple warned Plaintiff about the hack as soon as possible, told him to "take [that] warning seriously," and provided him with concrete next steps to prevent any further attacks. Compl. ¶¶ 42-45." Motion to Dismiss, p. 12, And that "Plaintiff has not adequately pled proximate cause because NSO Defendants' independent, intervening criminal acts destroy the causal chain." *Id*. Again, Apple is wrong.

As a preliminary matter, the Court should not undertake a determination regarding whether a breach of Apple's duty occurred or proximate causation – those are questions of fact for the jury's

-14-

1
2
3
4
determination.  *See Lawson v. Safeway Inc.*, 191 Cal. App. 4th 400, 416, 119 Cal. Rptr. 3d 366 (2010) ("proximate causation is generally a question of fact for the jury"); *Vasquez*, 118 Cal. App. 4th at 278, 12 Cal. Rptr. 3d 846 (2004) ("[T]he elements of breach of that duty [of care] and causation are ordinarily questions of fact for the jury's determination.").

5
6
7
8
9
10
11
12
13
14
15
16
17
18
Regardless, the Complaint clearly alleges these elements.  First, the allegations of breach are fairly straight forward — the Complaint alleges that Apple breached its duty owed to Plaintiff by failing to prevent and/or adequately and reasonably defending against the hacking done by NSO Defendants – again this failure was despite Apple's prior knowledge that NSO Defendants were actively targeting its customers with their malware and spyware and other surveillance technology and despite Apple's assurances to Plaintiff in its advertising that its customers were protected against such cyberattacks, *see e.g.*, Complaint, ¶ 82.  Apple's failure to protect Plaintiff's data, which consisted of sensitive confidential information, from hackers like NSO Defendants was a breach of Apple's duty to Plaintiff.  *Id.* at ¶ 83.  The facts surrounding the breach have been sufficiently alleged for pleading purposes at this stage in the case, and the Court should not make a determination whether or not an actual breach occurred, as that will be an issue for the jury's ultimate determination.

19
20
21
22
23
24
25
26
27
Second, Plaintiff has also sufficiently alleged causation between the hacking by NSO Defendants and Plaintiff's alleged damages.  "[T]o demonstrate actual or legal causation, the plaintiff must show that the defendant's act or omission was a 'substantial factor' in bringing about the injury." *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d at 1141(citation omitted). Here, Plaintiff alleges that the NSO Defendants hacked his personal and business confidential information that he suffered injuries as a result of the hacking, including non-economic injuries such as the expenditure of time and resources to investigate and remediate harm done by Defendants' conduct, suffered invasion of privacy, damage to Plaintiff's reputation, and damage

28

-15-

**1**

**2**

to the relationships and goodwill of Plaintiff's businesses, and emotional distress. *See* Complaint,

¶¶ 34-35, 56, 80; *see also id.* at ¶¶ 1-7, 51, 81, Count III – Invasion of Privacy California State

**3**

Law (Against NSO Defendants), ¶¶ 68-74, Count VIII – Intentional Inflict of Emotional Distress

**4**

California State Law (Against NSO Defendants), and ¶¶ 105-109.   In short, Plaintiff has

**5**

sufficiently connected the information hacked and stolen by NSO Defendants (that Apple was

**6**

obligated to protect) and the alleged injuries to establish that Apple's breach of duty plausibly

**7**

caused the harm to Plaintiff resulting in alleged damages. *Id.* at ¶¶ 84-86; *see also In re Ambry*

**8**

*Genetics Data Breach Litig.*, 567 F. Supp. 3d at 1140, 1141 (finding that plaintiffs sufficiently

**9**

demonstrated causation at the pleading stage between a data breach and the plaintiffs' alleged

**10**

damages where plaintiffs "sufficiently connect[ed] the information [that was] stolen and the

**11**

**12**

alleged injuries.").

**13**

Accordingly, because the other remaining elements of a claim for negligence have been

**14**

sufficiently alleged, the Court should deny Apple's Motion to Dismiss. *See e.g, Bass*, 394 F. Supp.

**15**

3d at 1039 (finding that plaintiff alleged a classic negligence claim (*i.e.*, that negligence had been

**16**

plausibly alleged) where "Facebook allegedly failed to comply with minimum data-security

**17**

standards during the period of the data breach. . . . [and in] turn, this breach plausibly caused the

**18**

**19**

harm to plaintiff resulting in alleged damages.").

**20**

### C.    Plaintiff Has Alleged a Viable Claim for False Advertising

**21**

> ### *1.    Plaintiff has plausibly alleged that "members of the public are likely to be deceived" by Apple's representations in connection with the sale of their iPhone and iCloud subscriptions.*

**22**

**23**

**24**

California's False Advertising Law ("**FAL**") generally prohibits advertising that contains

**25**

"any statement ... which is untrue or misleading, and which is known, or ... should be known, to

**26**

be untrue or misleading[.]". *Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*,

**27**

316CV02810BENBGS, 2018 WL 3618243, at *5 (S.D. Cal. July 30, 2018), aff'd, 821 Fed. Appx.

**28**

701 (9th Cir. 2020) (*quoting* Cal. Bus. & Prof. Code § 17500).  In order to have standing to bring a claim under the FAL, a plaintiff must establish "they suffered: (1) 'a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., **economic injury**,' and (2) that the economic injury 'was the result of, *i.e.*, **caused** by, the unfair business practice or false advertising that is the gravamen of the claim." *Id.* (*quoting Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 915-16 (Cal. Ct. App. 2016)) (emphasis added).  In order to satisfy the causation prong of the standing requirement, a plaintiff must demonstrate "a causal connection or reliance on the alleged misrepresentation." *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1046 (N.D. Cal. 2013)

Claims under the FAL are governed by the "reasonable consumer" test. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  "Under the reasonable consumer standard, [a plaintiff] must 'show that 'members of the public are likely to be deceived.'" *Id.* (*quoting Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995)); *see also Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 964 (N.D. Cal. 2022).[1]  "Whether a reasonable consumer would be deceived. . . [is] a question of fact not amenable to determination on a motion to dismiss." *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *see also, Linear Technology Corp. v. Applied Materials, Inc.*, 152

---

[1]  "A 'reasonable consumer' is '[an] ordinary consumer acting reasonably under the circumstances." *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 48 (Ct. App. 2006), as modified on denial of reh'g (Jan. 31, 2006).  Such a consumer "need not be 'exceptionally acute and sophisticated' nor must they "necessarily be wary or suspicious of advertising claims." *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486 (Ct. App. 2003).  Reasonable consumers are not required to be "versed in the art of inspecting and judging a product ... [or] the process of its preparation or manufacture." *See Colgan*, 135 Cal.App.4th at p. 682, 38 Cal.Rptr.3d 36.  Rather, to meet the "reasonable consumer" standard, "a plaintiff need only show that members of the public are likely to be deceived" by the defendant's advertising.  *Colgan*, at p. 682, 38 Cal.Rptr.3d 36.  Members of the public are likely to be deceived by advertising that is false and by advertising that, "although true, is either actually misleading or . . . has a capacity, likelihood, or tendency to deceive or confuse the public."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 940, 45 P.3d 243 (2002), as modified (May 22, 2002).

-17-

PLAINTIFF'S RESPONSE TO
APPLE INC.'S MOTION TO DISMISS
3:22-cv-05229-RS

Cal.App.4th 115, 134–35, 61 Cal.Rptr.3d 221 (2007) Citation omitted) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer."); *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 214, 673 P.2d 660 (1983) (finding demurrer inappropriate in a case by parents alleging fraudulent, misleading and deceptive advertising in the marketing of sugared breakfast cereals). In "rare situations", however, a court may determine, as a matter of law, that the alleged violations of the FAL are not plausible. *See Ham*, 70 F. Supp. 3d at 1193.

Apple argues that Plaintiff has failed to satisfy the applicable "reasonable consumer" standard. In particular, Apple claims that Corallo cannot show that its advertising was demonstrably false, or that it was likely to deceive a reasonable consumer. First, Apple again is attempting to shortcut the litigation process by asking the Court to make a premature factual determination regarding whether a reasonable consumer would be deceived by its advertising. This determination should be made by the trier of fact. Nonetheless, based upon the facts as alleged in the Complaint, it is clear that Plaintiff has plausibly alleged that "members of the public are likely to be deceived" by Apple's representations in connection with the sale of their iPhone and iCloud subscriptions.

Based upon the reasonable consumer standard outlined above, the language used by Apple clearly is and has been alleged to be misleading to a reasonable consumer like Plaintiff. "[T]he primary evidence in a false advertising case is the advertising itself." *Brockey v. Moore,* 107 Cal.App.4th 86, 100, 131 Cal.Rptr.2d 746 (Cal.App.2003); *see also Colgan*, 38 Cal. Rptr. 3d at 46 (citations omitted) ("In determining whether a statement is misleading under the statute, "'the primary evidence in a false advertising case is the advertising itself.' The 'misleading character' of a given representation 'appears on applying its words to the facts.'"). Here, in its advertising

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Apple claims that it manufacturers one of the safest and most secure mobile devices on the market with "powerful" security features to prevent anyone but the owner/user from accessing data on the iPhone and iCloud account.  *See* Complaint, ¶ 47.  "iPhone is designed to protect your data and your privacy.  Built-in security features help prevent anyone but you from accessing the data on your iPhone and in iCloud."   https://support.apple.com/guide/iphone/use-built-in-security-andprivacy-protections_iph6e7d349d1/ios.   "iCloud uses best-in-class security technologies, employs strict policies to protect your information, and leads the industry by adopting secure, privacy-preserving   technologies   like   end-to-end   encryption   for   your   data."   https://support.apple.com/en-us/HT202303.   The language used by Apple in its advertisements was artfully drafted to imply that, given Apple's advanced and "powerful" security features, a consumer like Corallo who buys an iPhone and subscribes to Apple's iCloud service is virtually guaranteed protection against unauthorized third parties from accessing the consumer's personal confidential information and data.  As alleged in the Complaint, this claim was false, indeed knowingly false when advertised, as Apple had experienced hacking incidents involving NSO Defendants and was well aware that its devices and iCloud storage accounts were highly susceptible to hacking by NSO Defendants.  *See* Complaint, ¶ 48.  Plaintiff relied on this information – these misrepresentations – when he purchased an iPhone and subscribed to Apple's iCloud storage service. *Id.* ¶ 99.

In short, all of the elements for a FAL claim have been adequately alleged.  Ultimately, whether Apple's advertising for its iPhone and iCloud products regarding its ability to prevent hacking and unauthorized access to its consumers' devices and accounts – especially in light of Apple's prior knowledge of the real threat posed by NSO Defendants and the extent of the data breach capabilities and the harm already inflicted on Apple and its consumers – is actually false or misleading or has a capacity, likelihood, or tendency to deceive or confuse the public should be a

-19-

**1**  question of fact for the jury and is not appropriate for a motion to dismiss.  Thus, Apple's motion

**2**  in this regard should be denied.

**3**  ### 2.    *Plaintiff's allegations satisfy the Rule 9(b) pleading standard.*

**4**  Apple's last argument is that Plaintiff fails to satisfy the heightened pleading requirements

**5**  of Federal Rule of Civil Procedure 9(b), which it argues applies to Plaintiff's FAL claims "because

**6**  Plaintiff alleges Apple's advertising was deliberately and knowingly misleading, *see* Compl. ¶¶

**7**  97-100".  Motion to Dismiss, p. 16.  Apple is wrong.

**8**

**9**  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the

**10**  circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

**11**  person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  "To comply with Rule 9(b),

**12**  allegations of fraud must be specific enough to give defendants notice of the particular misconduct

**13**  which is alleged to constitute the fraud charged so that they can defend against the charge and not

**14**  just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.

**15**  2007) (*quoting Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)); *see also Moore v.*

**16**  *Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under

**17**  rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an

**18**  adequate answer from the allegations.").  "Rule 9(b) serves three purposes: (1) to provide

**19**  defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the

**20**  filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose

**21**  reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [ ]

**22**  plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and

**23**  economic costs absent some factual basis.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th

**24**  Cir. 2009) (citations omitted).

**25**

**26**

**27**

**28**

Here, the Complaint gives detailed specificity about Apple's false advertising and misrepresentations with the requisite particularity of Rule 9(b).  The Complaint consists of 104 paragraphs that spell out the Who, What, When and How of Apple's false and misleading conduct.

**WHO.**  First, Corallo identifies "who" made the false advertising statements — of course, that was Apple.  *See e.g.*, Complaint, ¶¶ 5, 47, 97, 98, 100, 101, 102, and 103.

**WHAT**.   Second, Corallo specifies in detail the substance of the false advertising statements — for example, the Complaint alleges that Apple advertised that the iPhone is  "one of the safest and most secure mobile device on the market with "powerful" security features to prevent anyone but the owner/user from accessing data on the iPhone and iCloud account. . . "iPhone is designed to protect your data and your privacy.  Built-in security features help prevent anyone but you from accessing the data on your iPhone and in iCloud.". . . "iCloud uses best-in-class security technologies, employs strict policies to protect your information, and leads the industry by adopting secure, privacy-preserving technologies like end-to-end encryption for your data." Complaint, ¶ 47.  Despite knowledge of NSO Defendants' capabilities and history of illicit hacking activities and the real weaknesses in Apple's own security features for the products it promoted and sold, all of which was subject to litigation by Apple against NSO Defendants, Apple's advertising remained unchanged — Apple continued to mislead Plaintiff and the public at large, and continued to tout its devices and services as the most "powerful" and secure devices and data storage accounts in the industry without any disclaimer or warning to Plaintiff regarding the actual and real dangers posed by NSO Defendants.  *See id.* at ¶ 48 ("The potential for a cyberattack on Apple's customers by NSO Defendants was known or should have been known by Apple. Prior to the hacking incident by NSO Defendants in this case, Apple had already experienced hacking incidents involving NSO Defendants and was well aware that its devices and iCloud storage accounts were highly susceptible to hacking by NSO Defendants. Apple's

-21-

knowledge of the threat posed by NSO Defendants and the extent of the data breach capabilities (and the harm already inflicted on Apple and its customers) is highlighted in the separate lawsuit brought by Apple against NSO Defendants. See Apple Complaint."); *id.* at ¶ 49 ("Despite actual knowledge of NSO Defendants' hacking capabilities and their actual past cyberattacks directed towards Apple and its customers, prior to the hacking incident by NSO Defendants in this case, Apple did not warn Corallo that he was a target of NSO Defendants' hacking campaign or that their products and services were highly susceptible to hacking by NSO Defendants."). Plaintiff had no idea that NSO Defendants could easily hack his iPhone and iCloud account and would never have purchased from Apple had he known otherwise.

**WHEN.** Third, Corallo specifies the time frame in which the false advertising statements were made — prior to his purchase of the iPhone and subscription to the iCloud services, and prior to NSO Defendants' hack which Apple notified Plaintiff about or about November 23, 2021, Apple falsely advertised its products which induced Corallo to purchase its product. *See e.g.*, Complaint, ¶¶ 9, 41, 42, 43, 44, 45, 47, 58, Exhibit "C".

**HOW.** Finally, Corallo specifies the context in which the false advertising statements were made — the false advertising and misrepresentations were made about the iPhone and iCloud capabilities prior to Corallo's purchase to induce Corallo and other consumers to purchase the iPhone and iCloud services. *See e.g.*, Complaint, ¶¶ 47 and 98.

Accordingly, Corallo has thus properly pled a FAL claim with the requisite particularity under Rule 9(b), and as such, Apple's motion to dismiss in this regard should be denied.

### III.   <u>CONCLUSION</u>

WHEREFORE, Plaintiff requests that the Court deny Apple's Motion to Dismiss and require Apple to file its answer to Plaintiff's Complaint within 10 days of the Court's order denying the motion.

-22-

1

2  Dated: November 29, 2022          **OSORIO INTERNACIONAL, P.A.**

3                                    /s/ *Carlos F. Osorio*
                                     _____
4                                    Carlos F. Osorio (*pro hac vice admission pending*)
                                     *Attorneys for Plaintiff Francesco Corallo*

5

6                          **CERTIFICATE OF SERVICE**

7          I HEREBY CERTIFY, that on this 29th day of November 2022 a true and correct copy of

8
   the foregoing was served by Notice of Electronic Filing (CM/ECF) upon all registered users in this
9
   case.
10

11                                   */s/ Carlos F. Osorio*
                                     Carlos F. Osorio, Esq., B.C.S.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                        -23-
28