1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone:    (213) 443-4355
5  Facsimile:    (213) 443-4310

6  Attorneys for Defendants NSO GROUP TECHNOLOGIES LTD.
   and Q CYBER TECHNOLOGIES LTD.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11  FRANCESCO CORALLO,                    Case No. 3:22-cv-05229-RS

12            Plaintiff,                  [*Honorable Richard Seeborg*]

13       v.                              **DEFENDANTS NSO GROUP
                                         TECHNOLOGIES LTD.**
14  NSO GROUP TECHNOLOGIES LTD.          **AND Q CYBER TECHNOLOGIES LTD.'S**
    and Q CYBER TECHNOLOGIES LTD.,       **REPLY IN SUPPORT OF MOTION TO**
15  and APPLE, INC.                      **DISMISS COMPLAINT**

16            Defendants.                *No hearing scheduled.*

17                                       Action Filed:   09/13/2022

18

19

20

21

22                        REDACTED VERSION

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.  INTRODUCTION ....................................................................................................1

II.  NSO IS NOT SUBJECT TO PERSONAL JURISDICTION...................................1

    A.  NSO is not subject to specific jurisdiction in California. ..............................1

    B.  Exercising personal jurisdiction over NSO would be unreasonable................5

III.  THE COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS.* ..........7

IV.  PLAINTIFF DOES NOT STATE ANY CLAIM AGAINST NSO. ..................12

    A.  Plaintiff abandons his Alien Tort Statute claim..........................................12

    B.  Plaintiff does not plead $5,000 in damage or loss under the CFAA............12

    C.  Plaintiff cannot sue NSO under California law. ...........................................13

    D.  Plaintiff's California law claims fail............................................................14

        1.  Plaintiff states no claim for invasion of privacy. ..............................14

        2.  Plaintiff states no claim for intentional infliction of emotional distress............14

        3.  Plaintiff states no CDAFA claim. ....................................................15

        4.  Plaintiff concedes conspiracy is not a cause of action. .....................15

V.  CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003) ...................................................................................15

*Al-Rajhi v. Mayfair Holdings, LLP*,
2018 WL 3926439 (D. Ariz. Aug. 16, 2018) ...........................................................................4

*Alhathloul v. DarkMatter Grp.*,
2023 WL 2537761 (D. Or. Mar. 16, 2023) ..................................................................... *passim*

*Alt. Health USA Inc. v. Edalat*,
2022 WL 767573 (C.D. Cal. Mar. 14, 2022) .....................................................................10, 11

*Amarte USA Holdings, Inc. v. G.L.E.D. Cosmetics US Ltd.*,
2020 WL 10322586 (S.D. Cal. Dec. 15, 2020) ........................................................................2

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,
1 F.3d 848 (9th Cir. 1993) .....................................................................................................6, 7

*Arabian v. Sony Elec. Inc.*,
2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ..........................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................12, 13

*Bogard v. Emp'rs Cas. Co.*,
164 Cal. App. 3d 602 (1985) .................................................................................................15

*Boruta v. JPMorgan Chase Bank, N.A.*,
2019 WL 4010367 (N.D. Cal. Aug. 26, 2019) ........................................................................2

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
334 F.3d 390 (4th Cir. 2003) .................................................................................................13

*Carijano v. Occidental Petrol. Corp.*,
643 F.3d 1216 (9th Cir. 2011) .................................................................................................7

*Cheng v. Boeing Co.*,
708 F.2d 1406 (9th Cir. 1983) ...............................................................................................10

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993) ...................................................................................................6

*In re Corinthian Colls., Inc. S'holder Derivative Litig.*,
2012 WL 8502955 (C.D. Cal. Jan. 30, 2012) ...................................................................2, 13

*Corrie v. Caterpillar, Inc.*,
  403 F. Supp. 2d 1019 (W.D. Wash. Nov. 22, 2005)..........................................................7

*Custom Packaging Supply, Inc. v. Phillips*,
  2016 WL 1532220 (C.D. Cal. Apr. 15, 2016) ...............................................................12

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) .......................................................................................5

*Goodman v. Goodman*,
  2022 WL 17826390 (S.D.N.Y. Dec. 21, 2022) .............................................................12

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ..........................................................................14

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) .......................................................................................6

*Henkin v. Islamic Rep. of Iran*,
  2021 WL 2914036 (D.D.C. July 12, 2021).....................................................................7

*Hungerstation LLC v. Fast Choice LLC*,
  2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ........................................................ *passim*

*Hungerstation LLC v. Fast Choice LLC*,
  857 F. App'x 349 (9th Cir. 2021) ..........................................................................3, 4, 5

*Int'l Fed'n of Prof. & Tech. Eng'rs, Local 21, AFL-CIO v. Super. Ct.*,
  52 Cal. 4th 319 (2007) ..................................................................................................14

*Israel Discount Bank Ltd. v. Schapp*,
  505 F. Supp. 2d 651 (C.D. Cal. 2007) ...........................................................................7

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) .......................................................................................5

*Mintz v. Mark Bartelstein & Assocs.*,
  906 F. Supp. 2d 1017 (C.D. Cal. 2012) ........................................................................14

*Moto Novu, LLC v. Percival*,
  2017 WL 7243462 (N.D. Cal. Dec. 1, 2017)..................................................................2

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ..........................................................................12

*Nowak v. Xapo, Inc.*,
  2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ..............................................................13

*Paccar Int'l v. Comm. Bank of Kuwait*,
  757 F.2d 1058 (9th Cir. 1985) ...................................................................................5, 6

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981)............................................................................7, 8, 9, 10

*Reflex Media, Inc. v. Chan,*
    2020 WL 6694316 (C.D. Cal. Oct. 30, 2020)............................................................2

*RHUB Commc'ns, Inc. v. Karon,*
    2017 WL 3382339 (N.D. Cal. Aug. 7, 2017) ........................................................15

*Roth v. Garcia Marquez,*
    942 F.2d 617 (9th Cir. 1991) ...............................................................................6

*Sajfr v. BBG Comms., Inc.,*
    2012 WL 398991 (S.D. Cal. Jan. 10, 2012)..........................................................13

*Schijndel v. Boeing Co.,*
    263 F. App'x 555 (9th Cir. 2008) ........................................................................8

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ...........................................................................2, 4

*Scott-Codiga v. Cty. of Monterey,*
    2011 WL 4434812 (N.D. Cal. Sept. 23, 2011) ....................................................14

*Shiferaw v. City & Cty. of S.F.,*
    2022 WL 1237895 (N.D. Cal. Mar. 30, 2022).......................................................12

*Sinatra v. National Enquirer, Inc.,*
    854 F.2d 1191 (9th Cir. 1988) .............................................................................6

*STM Grp., Inc. v. Gilat Satellite Networks Ltd.,*
    2011 WL 2940992 (C.D. Cal. July 18, 2011) .......................................................11

*Umeda v. Tesla, Inc.,*
    2022 WL 18980 (9th Cir. Jan. 3, 2022) ................................................................9

*Van Buren v. United States,*
    141 S. Ct. 1648 (2021)......................................................................................12

*Vigg v. Jaddou,*
    2022 WL 3581930 (N.D. Cal. Aug. 10, 2022) ......................................................4

*Walden v. Fiore,*
    571 U.S. 277 (2014)........................................................................................3, 6

*Wesch v. Yodlee, Inc.,*
    2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ......................................................12

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.,*
    472 F. Supp. 3d 649 (N.D. Cal. 2020) ........................................................... *passim*

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. Aug. 12, 2014) ........................................................14

*Zellerino v. Roosen*,
   2016 WL 10988763 (C.D. Cal. Aug. 22, 2016)..........................................................5

**Statutes**

18 U.S.C. § 1030(a)(5)............................................................................................12

18 U.S.C. § 1030(c)(4)(A)(i)(I), (g)..........................................................................12

18 U.S.C. § 1030(g) ...................................................................................................4

Cal. Penal Code § 502(e)(1)................................................................................14, 15

**Other Authorities**

88 Fed. Reg. 18,957 (Mar. 27, 2023) .......................................................................10

Mary Zhang, *Apple's Data Center Locations* (Sept. 15, 2022),
   https://dgtlinfra.com/apple-data-center-locations/ ....................................................3

Eddy Meiri, *Foreign Judgments Enforcement in Israel,* 31 Int'l L. Practicum 39
   (2018) ......................................................................................................................10

Raffi Berg, *Israel Judicial Reform Explained: What Is the Crisis About?*, BBC
   News (July 24, 2023), https://www.bbc.com/news/world-middle-east-
   65086871.................................................................................................................11

U.S. District Courts, *Federal Court Management Statistics—Comparison Within
   Circuit—During the 12-Month Period Ending March 31, 2023* (Mar. 31,
   2023),
   https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparis
   on0331.2023.pdf .....................................................................................................11

1

**<u>REPLY</u>**

## I.   INTRODUCTION

"The Northern District of California is not an international court of internet law." *Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *6 (N.D. Cal. Jan. 13, 2020). Yet that is precisely how Plaintiff hopes to use this Court. He is a foreign resident who does not dispute that he has never lived in (or even visited) California. He sues NSO and Q Cyber (collectively, "NSO"), both foreign corporations with no presence in California. And he bases his claims on (false) allegations about actions NSO allegedly took from Israel, on behalf of Italy and the Netherlands.[1] As NSO explained in its motion, the law is clear that Plaintiff's purely foreign claims cannot proceed in this Court. In all 37 pages of Plaintiff's overlength brief, he never addresses even one of the cases cited in NSO's motion, despite having requested additional pages for that very purpose. For the most part, he does not even cite cases to support his own arguments, relying instead on generalized statements of legal standards and conclusory quotations from his complaint. But nothing he says can justify his extraordinary attempt to involve "[f]ederal courts sitting in California" in a "wholly foreign dispute[]" simply because he allegedly "host[ed] his data with a Silicon Valley company." *Id.* (cleaned up). The Court should dismiss Plaintiff's claims against NSO with prejudice, both for lack of personal jurisdiction and for *forum non conveniens*.

Plaintiff also does not adequately plead his claims, and even abandons his first cause of action. Here too, Plaintiff largely refuses to engage with the authority cited in NSO's motion—despite having requested a dozen additional pages to respond to NSO's "94 cases"—and again relies on bare quotations from his complaint. But Plaintiff's allegations are too generalized and conclusory to state any claim against NSO. That is an independent basis to dismiss Plaintiff's claims.

## II.   NSO IS NOT SUBJECT TO PERSONAL JURISDICTION.

### A.   NSO is not subject to specific jurisdiction in California.

Plaintiff concedes the "purposeful direction" test for specific jurisdiction governs this case. (Opp. 6 n.4.) As NSO explained, however, Plaintiff does not allege any facts showing that (1) NSO

---

[1] Contrary to Plaintiff's opposition, NSO does not operate its software—only NSO's government customers do so. (Shohat Decl. ¶¶ 10-11.) Plaintiff submits no contrary evidence.

"expressly aimed" case-related conduct at California, or (2) Plaintiff was harmed "in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802-803 (9th Cir. 2004). In response, Plaintiff relies on his assertion that NSO accessed some Apple servers that happened to be in California. (Opp. 7-9.) As courts uniformly hold, that does not support specific jurisdiction. *See Alhathloul v. DarkMatter Grp.*, 2023 WL 2537761, at *5-8 (D. Or. Mar. 16, 2023); Mot. 7-8 & n.7.

  **First**, Plaintiff does not plead a sufficient factual basis to conclude NSO *did* access any California-based Apple servers. He asserts his "Apple iCloud cloud storage account" was "on servers located in California" (Compl. ¶ 21), but Plaintiff would have no way of knowing on which servers his iCloud account was stored, and he pleads no factual basis for that supposed knowledge.[2] Similarly, he alleges NSO accessed California servers solely "[u]pon information and belief" (Compl. ¶ 39), but he pleads no factual basis for his belief. *See Amarte USA Holdings, Inc. v. G.L.E.D. Cosmetics US Ltd.*, 2020 WL 10322586, at *2 (S.D. Cal. Dec. 15, 2020) (holding "information and belief" allegation is "not a well-pleaded fact" absent "factual allegations as to what information supports [the] belief"); *Boruta v. JPMorgan Chase Bank, N.A.*, 2019 WL 4010367, at *4-5 (N.D. Cal. Aug. 26, 2019) (rejecting "information and belief" allegation that "lack[ed] any supporting facts").[3] These "[u]nsupported assertions" alleged "on information and belief" are "insufficient to establish a prima facie showing of jurisdiction." *Moto Novu, LLC v. Percival*, 2017 WL 7243462, at *1 (N.D. Cal. Dec. 1, 2017); *accord Reflex Media, Inc. v. Chan*, 2020 WL 6694316, at *3 (C.D. Cal. Oct. 30, 2020).

  **Second**, courts unanimously hold that the use of a third party's servers cannot support specific jurisdiction. (Mot. 7-8 & n.7.)[4] Plaintiff cites no case holding otherwise. To the contrary,

---

[2] In any event, NSO does not operate its software and so could not have accessed Plaintiff's iCloud account anywhere. (Shohat Decl. ¶¶ 10-11.)

[3] Plaintiff cannot rely on allegations from Apple's complaint in another lawsuit to support his own claims. *See In re Corinthian Colls., Inc. S'holder Derivative Litig.*, 2012 WL 8502955, at *6 (C.D. Cal. Jan. 30, 2012) ("A plaintiff may not rely on allegations raised in another lawsuit ...."). Even if he could, the paragraphs from Apple's complaint he cites do not say anything about California. (*Compare* Compl. ¶ 39 (citing Apple Compl. ¶¶ 50-51), *with* Apple Compl. ¶¶ 50-51.)

[4] Plaintiff's claim that NSO "targeted [its] actions at … consumers who purchase goods and services from California businesses" (Opp. 8 (quoting Compl. ¶ 21)) obviously does not support

the Ninth Circuit and its district courts have rejected specific jurisdiction based on allegations no different than Plaintiff's. For example, the foreign plaintiff in *Hungerstation LLC v. Fast Choice LLC*, 857 F. App'x 349, 351-52 (9th Cir. 2021), sued foreign defendants under the CFAA for allegedly accessing data the plaintiff stored on third-party servers in California. *See Hungerstation*, 2020 WL 137160, at *1-2. The Ninth Circuit held that allegation could not support specific jurisdiction because "the alleged tortious conduct took place" overseas, and "the location of the servers was fortuitous." 857 F. App'x at 351. So too here. Any alleged actions by NSO were taken in Israel, and Plaintiff alleges no facts suggesting that NSO knew where Apple's servers were located or had any control over Apple's storage decisions—nor could he. (Shohat Decl. ¶ 14.)[5] As in *Hungerstation*, Plaintiff may not establish specific jurisdiction over "a private foreign entity" by alleging it "engaged in tortious foreign conduct from a location outside the United States by remotely accessing servers located in the United States." 857 F. App'x at 351.

Plaintiff does not even acknowledge *Hungerstation*, let alone distinguish it. Nor does Plaintiff address the recent decision in *Alhathloul*, which also rejected specific jurisdiction in indistinguishable circumstances. 2023 WL 2537761, at *5-8. There, as here, a foreign plaintiff accused a foreign defendant of using Apple "servers located in the United States" to hack her iPhone. *Id.* at *2, 5. The court held that could not support specific jurisdiction. *Id.* at *5. It rejected the plaintiff's argument, identical to Plaintiff's here, that the defendants targeted the forum by "us[ing] Apple's U.S.-based servers to hack [the] [p]laintiff's phone." *Id.* at *6. Even if the defendants had "targeted Apple's servers," the court held, that would show only that the defendants "purposefully directed their conduct at a third party—Apple, whose choice to host their servers in the United States is entirely unrelated to the conduct at issue in [the] complaint." *Id.* The same is true here. NSO cannot be dragged into California "based on the choice of a third party" to locate

---

specific jurisdiction, which must be based on the defendant's "own affiliation with the State," not "interact[ions] with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

[5] Apple's California data center is the smallest of its five U.S. data centers, and it also has data centers in Denmark and China. Mary Zhang, *Apple's Data Center Locations* (Sept. 15, 2022), https://dgtlinfra.com/apple-data-center-locations/. Plaintiff does not allege NSO specifically targeted any server in Apple's California center.

some of its servers there. *Id.* at *8.[6] "That the Bay Area is a hub for prominent technology companies is not a reflection of purposeful direction." *Hungerstation*, 2020 WL 137160, at *6 n.7.

The only case Plaintiff cites for his position—*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020)—supports NSO. There, the court found specific jurisdiction based on its view that the California-resident plaintiff alleged that NSO specifically "sought out and accessed" the plaintiff's *own servers* in California. *Id.* at 672-73. But the court held specific jurisdiction could *not* be based on NSO's alleged use of *third-party* servers located in California to "target" individuals who were "not alleged to be located in California." *Id.* at 671. Here, Plaintiff is not a California resident, and he does not allege that any computer *he owned* was in California. He asserts specific jurisdiction purely based on NSO's alleged access to third-party servers, the location of which is "fortuitous." *Id.* That cannot support specific jurisdiction over NSO.

**Third**, Plaintiff did not suffer any injury "in the forum state." *Schwarzenegger*, 374 F.3d at 803. Plaintiff is a foreign resident who has never lived in California. (*See* Compl. ¶¶ 6, 8.) But he nonetheless argues he was injured in California because, he claims, that is where Apple chose to store his iCloud data. (Opp. 9.) Setting aside Plaintiffs' failure to adequately allege NSO accessed California servers, Plaintiff cites no case for the puzzling claim that a foreign resident can be injured somewhere *he has never even been* merely because some of his data was allegedly stored on a server there. To the contrary, Plaintiff seeks to recover "economic damages," 18 U.S.C. § 1030(g), and "economic loss occurs" where the plaintiff resides. *Hungerstation*, 857 F. App'x at 352; *accord, e.g.*, *Vigg v. Jaddou*, 2022 WL 3581930, at *3 (N.D. Cal. Aug. 10, 2022); *Al-Rajhi v. Mayfair Holdings, LLP*, 2018 WL 3926439, at *4 (D. Ariz. Aug. 16, 2018). That is particularly true given that Plaintiff alleges NSO acted on behalf of "The Netherlands and/or Italy," which allegedly "targeted" him and his "business interests" in foreign countries, not in California. (Compl. ¶ 6.) Any harm Plaintiff suffered from the alleged access to his data thus occurred in his residence of Sint Maarten.

Likewise, Plaintiff would experience any alleged "emotional distress" or invasion of

---

[6] While Plaintiff has sued Apple, Apple is a third party with respect to each of the claims against NSO (and vice versa). None of Plaintiff's claims is asserted against both Apple and NSO.

privacy—which Plaintiff alleges "deeply affected [him] in a personal and individual way," and therefore not in a U.S. forum to which he has no connection—solely where he resides. (Compl. ¶¶ 72, 108); *see Zellerino v. Roosen*, 2016 WL 10988763, at *6-7 (C.D. Cal. Aug. 22, 2016) (holding harm from "invasion of privacy" could "only be felt" in plaintiff's residence, not California). Plaintiff thus did not suffer any alleged injury in California and cannot sue NSO there.

### B.      Exercising personal jurisdiction over NSO would be unreasonable.

*Hungerstation* and *Alhathloul* also foreclose Plaintiff's argument that exercising personal jurisdiction over NSO would be reasonable. Those cases held that personal jurisdiction would be unreasonable in indistinguishable circumstances. But Plaintiff again does not even acknowledge that *Hungerstation* and *Alhathloul* exist. Instead, he relies solely on a misreading of *WhatsApp*.

*First*, Plaintiff's claims have no genuine connection to California and will severely burden NSO. (Mot. 6.) Plaintiff is a foreign resident who alleges that NSO, a foreign entity, accessed his devices from a foreign country. That "allegedly tortious conduct—sending an iMessage from a foreign locale, transmitted through U.S.-based servers, to a foreign phone with intent to hack the phone in a foreign locale—presents no 'purposeful interjection into United States' affairs." *Alhathloul*, 2023 WL 2537761, at *8; *see Hungerstation*, 857 F. App'x at 352. And Plaintiff concedes "the burden on NSO … to litigate in California [is] substantial." (Opp. 11 (cleaned up)). NSO "is incorporated in [Israel], owns no property in the forum, and has no employees" there. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125-26 (9th Cir. 2002). All of NSO's witnesses and evidence (including export-controlled information) are overseas. (Shohat Decl. ¶ 4); *see Hungerstation*, 857 F. App'x at 352.

Plaintiff, in contrast, is a "nonresident," which automatically weighs against jurisdiction. *Id.*; *Paccar Int'l v. Comm. Bank of Kuwait*, 757 F.2d 1058, 1064-65 (9th Cir. 1985). That distinguishes *WhatsApp*, in which the plaintiff was a California resident with California-based computers. 472 F. Supp. 3d at 676-77. Plaintiff "asserts" that "his own witnesses and evidence … are heavily concentrated in California" (Opp. 11-12), but he submits no factual support for that dubious claim. His unsupported *ipse dixit* cannot overcome NSO's actual evidence. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("When the defendant raises a factual attack" on jurisdiction, "the plaintiff must

support her jurisdictional allegations with 'competent proof' … under the same standard that governs in the summary judgment context."). In any event, any minimal convenience to Plaintiff from litigating in California is an "insignificant" factor. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993); *see Walden*, 571 U.S. at 384 ("[L]imits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs").

The location of "Apple's witnesses and evidence" (Opp. 12) is irrelevant. Apple is not a plaintiff in this case, and NSO does not seek to dismiss Plaintiff's claims against Apple. Plaintiff is free to maintain his suit against Apple in its home state of California. But he may not use his claims against Apple to drag *NSO* into a foreign jurisdiction with which it has no jurisdictionally relevant contacts. "Personal jurisdiction over each defendant must be analyzed separately." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

**Second**, Plaintiff concedes Israel's sovereignty "militate[s] in favor of NSO." (Opp. 12.) Indeed, sovereignty *always* weighs against jurisdiction when the "defendant is from a foreign nation." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993); *see Paccar*, 757 F.2d at 1065.[7] And the conflict is unusually strong here, since ███████████ ████████████████████████████████████████████████████ ███████████ (Dkt. 89-2; *see* Dkt. 91-3.) Plaintiff also ignores that his claims conflict with the sovereignty of the Netherlands and Italy, since he challenges alleged investigations that he claims were taken on those nations' behalf. (Compl. ¶¶ 6, 97); *see Alhathloul*, 2023 WL 2537761, at *10.

In contrast to Israel, the Netherlands, and Italy, California has no valid interest in a lawsuit brought by a foreign plaintiff against foreign defendants related to actions allegedly committed in and by foreign countries. *Alhathloul*, 2023 WL 2537761, at *11; *see Paccar*, 757 F.2d at 1065. Even if California "has a strong interest in protecting California companies" (Opp. 12), Plaintiff *is not a California company*. *Alhathloul*, 2023 WL 2537761, at *11. California has no valid interest in protecting nonresidents like Plaintiff merely because they purchased in a foreign country a product

---

[7] The case Plaintiff cites, *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988), has been expressly limited to cases in which the defendant has a "physical presence or agent within the United States." *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991) (cleaned up).

sold by a California-based technology company. *Id.* "The Northern District of California is not an international court of internet law." *Hungerstation*, 2020 WL 137160, at *6 (cleaned up).

**Third**, Plaintiff "has the burden of proving the unavailability of an alternative forum," *Amoco Egypt*, 1 F.3d at 853, but he offers no basis to believe that, contrary to the holdings of numerous courts, Israel is not an adequate forum. *See WhatsApp*, 472 F. Supp. 3d at 677; *Israel Discount Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 659 (C.D. Cal. 2007); *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1026 (W.D. Wash. Nov. 22, 2005); *Henkin v. Islamic Rep. of Iran*, 2021 WL 2914036, at *12 (D.D.C. July 12, 2021). Israel would have "jurisdiction over the matter" (Opp. 13) because NSO "is 'amenable to process'" there, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981), and will consent to jurisdiction in Israel. And, contrary to Plaintiff's argument, NSO need not demonstrate that "Israel would adequately resolve Plaintiff's claims" in this lawsuit or that Israel "is a more adequate forum." (Opp. 13, 15.) Israel need only offer "some remedy," even if "the law applicable in the alternative forum is less favorable." *Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1225 (9th Cir. 2011). That requirement is "easy to pass," *id.*, and is amply satisfied here. "Israeli tort law provides adequate remedies for plaintiffs injured as a result of tortious conduct," *Corrie*, 403 F. Supp. 2d at 1026, including claims for intentional infliction of emotional distress, *Henkin*, 2021 WL 2914036, at *12.[8]

## III.   THE COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS.*

Plaintiff's arguments against dismissal for *forum non conveniens* fail for largely the same reasons as his arguments that personal jurisdiction would be reasonable.

**First**, as explained, Israel is an adequate alternative forum, and Plaintiff's contrary arguments misstate the law. It is irrelevant whether *Apple* can be sued in Israel (Opp. 15), because NSO does not seek to dismiss Plaintiff's claims against Apple. Those claims—for negligence and

---

[8] Plaintiff does not and cannot explain how "further investigation and jurisdictional discovery" could be relevant to this issue. (Opp. 13.) The remedies available in Israel is a topic for legal research—which Plaintiff could have conducted any time after NSO filed its motion—not fact discovery. Plaintiff certainly does not provide "a highly compelling showing" that "specific facts material to the analysis likely could be uncovered through discovery." (Dkt. 94 at 3 n.3.)

false advertising—are based on different causes of action and different facts than the claims asserted against NSO. Accordingly, Plaintiff's claims against *NSO* must proceed in Israel; his claims against Apple may remain in this Court.[9] Furthermore, this argument becomes moot should the Court grant Apple's pending motion to dismiss.

**Second**, the private factors require dismissal. (Mot. 11-12.) Dismissal for *forum non conveniens* is "appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft*, 454 U.S. at 249. That is the case here. It is undisputed that "the burden on NSO … to litigate in California [is] substantial." (Opp. 11 (cleaned up)), because NSO is a foreign corporation that has no presence in California (Shohat Decl. ¶ 4). *See Schijndel v. Boeing Co.*, 263 F. App'x 555, 557 (9th Cir. 2008) (the "fact that many important witnesses and a great deal of evidence" are located abroad is entitled to "substantial weight"). Plaintiff introduces no facts to support his assertion that NSO has a "widespread international presence" (Opp. 16), let alone to show that litigating in California would not be burdensome. Nor does Plaintiff cite any case suggesting it could be relevant that NSO has been sued in California by other plaintiffs in different lawsuits. Litigating *this case* will be burdensome, irrespective of other cases. In any event, NSO has challenged personal jurisdiction or moved to dismiss under *forum non conveniens* (or both) in all of those cases.[10]

In contrast, Plaintiff is a foreign resident, so it is not "reasonable" to assume that California is a "convenient" forum. *Piper Aircraft*, 454 U.S. at 255-56. There is no reason to think Plaintiff would be more burdened by litigating in one forum where he does not reside than in any other forum where he does not reside. His conclusory and unexplained assertion that "Israel would be

---

[9] *WhatsApp* did not "reject[]" the "argument that Israel is a more suitable forum." (Opp. 17-18.) *WhatsApp* did not address *forum non conveniens*, and it held Israel *was* an adequate alternative forum. 472 F. Supp. 3d at 677. And, as noted, *WhatsApp*'s holding that jurisdiction was reasonable in California turned on the fact that, unlike here, the plaintiff was a California resident. *Id.*

[10] *WhatsApp*, No. 4:19-cv-07123, Dkt. 45 at 11-16, Dkt. 163 at 3; *Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 3:21-cv-09078 (N.D. Cal.), Dkt. 48 at 4-8, Dkt. 51 at 2-5; *Dada v. NSO Grp. Techs. Ltd.*, No. 3:22-cv-07513 (N.D. Cal.), Dkt. 46 at 2-9, Dkt. 54 at 1-7.

1  more burdensome and inconvenient" (Opp. 17) is not the sort of "specific reason[] of convenience"

2  that could overcome the burden on NSO. *Piper Aircraft*, 454 U.S. at 249; *see id.* at 259 ("Finding

3  that trial in the plaintiff's chosen forum would be burdensome, however, is sufficient to support

4  dismissal on grounds of *forum non conveniens*.").[11]

5          Nor can Plaintiff establish that NSO's witnesses or evidence could be brought to California.

6  NSO's supposed "resources" (Opp. 18)—for which Plaintiff cites no factual support—are beside

7  the point because the restrictions on NSO's evidence are primarily *legal*, not practical. Israel's

8  Defense Export Control Law ("DECL") unambiguously prohibits NSO from "[t]ransfer[ring]

9  defense know-how … outside of Israel." (DECL § 15(a), Shohat Decl. Exh. A.) The DECL defines

10 "[d]efense know-how" as including *any* "[i]nformation that is required for the development or

11 production of defense equipment or its use, including information referring to design, assembly,

12 inspection, upgrade and modification, training, maintenance, operation and repair of defense

13 equipment or its handling in any other way," including "technical data or technical assistance."

14 (*Id.* § 2.) Plaintiff ignores these restrictions, which plainly apply to information about NSO's

15 technology that will be necessary for Plaintiff to litigate and NSO to defend this case. (Shohat

16 Decl. ¶ 5.) These restrictions will also prevent much testimony from Israeli witnesses from being

17 used in this Court, even if those witnesses could be deposed in Israel. (Opp. 20.)[12]

18          In addition, ███████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████████████████

21 ████████████████████████████████  DECL will impair the parties' access to proof to support their

22 claims and defenses and will pose "practical problems" throughout discovery and trial. *Umeda v.

23 Tesla, Inc.*, 2022 WL 18980, at *1 (9th Cir. Jan. 3, 2022). If the case were brought in Israel, on the

24 other hand, evidence and testimony would remain within Israel, and an Israeli court could structure

25

26 [11] Again, Apple's convenience (Opp. 16-17) is irrelevant. *Supra* 7-8.

27 [12] The Supreme Court has rejected Plaintiff's argument (Opp. 20) that NSO must identify specific
witnesses. *Piper Aircraft*, 454 U.S. at 258. The DECL applies to *all* Israeli citizens, so the specific

28 identity of any Israeli witness is irrelevant. (DECL § 15.)

discovery to avoid export control and ███████ concerns.  Blecher Decl. (Dkt. 60-3) ¶¶ 3-6

Finally, NSO need not show "that this Court's judgment would not be enforceable against [it] in Israel." (Opp. 20.) All that matters is that an Israeli judgment would "be *easier* to enforce" in Israel, which "weighs strongly in favor of dismissal." *Alt. Health USA Inc. v. Edalat*, 2022 WL 767573, at *9 (C.D. Cal. Mar. 14, 2022) (emphasis added). Although Plaintiff cites Israel's Enforcement of Foreign Judgments Law, that law requires a plaintiff to prove the judgment "is not in contrast to public policy," and Israeli courts will not enforce a judgment that "might be detrimental to Israel's sovereignty or security." Eddy Meiri, *Foreign Judgments Enforcement in Israel*, 31 Int'l L. Practicum 39, 41 (2018). Plaintiff does not address these conditions for enforcement.

***Third***, the public factors also require dismissal. California has no interest in protecting foreign Plaintiffs who challenge actions allegedly taken in foreign countries by foreign actors. *Alhathloul*, 2023 WL 2537761, at *11. Plaintiff again invokes the supposed interests of Apple and California-resident Apple users (Opp. 22), but Apple is not the plaintiff in this case, and Plaintiff is not a California resident. *Cf. Alhathloul*, 2023 WL 2537761, at *11 (holding "Apple is not a party to this action and its interests cannot be considered"). Plaintiff must identify California's interest in *this lawsuit,* not in hypothetical lawsuits that might be brought by different plaintiffs. As for the United States, Plaintiff cites no case holding that the *United States*' supposed interests are relevant to whether *California* is a proper forum. That aside, the Executive Order Plaintiff cites does not mention NSO and is limited to the *United States' use* of "commercial spyware." 88 Fed. Reg. 18,957 (Mar. 27, 2023). The United States' own decision not to use certain technologies under specific conditions reflects no interest in this lawsuit, and it does not give U.S. courts a roving commission to punish alleged privacy violations occurring overseas.[13]

---

[13] Although Plaintiff sues (improperly) under U.S. and California law (Opp. 23), there is no reason Israeli courts would be unable to apply that law. *See Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983) ("[A] Taiwan tribunal is competent to decide questions of American law, if American law should apply to the issues in this litigation."). Anyway, it is far from obvious that U.S. or California law would apply in Israel, and "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Piper Aircraft*, 454 U.S. at 247.

Israel, on the other hand, has a strong interest in a lawsuit against an Israeli corporation based on the alleged use of a technology the Israeli government approves and regulates. (Shohat Decl. ¶¶ 3, 5-9). Plaintiff's claim that ████████████████████████████████████ ████████████████████████████████ (Opp. 22.) ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (Dkt. 91-3; Dkts. 89-1–89-8.) ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ (Dkts. 89-2 at 2; *see* Dkts. 89-3 at 1, 89-4 ¶ 3, 89-6 ¶ 3, 89-7 at 1, 89-8 at 1.) Neither California nor the United States has ████████████████████████—or, indeed, any interest at all.

Because "the local interest in [the] controversy is weak as compared to the alternative forum's interest," *any* "burden on local courts and juries, and the related costs, are not justified." *Edalat*, 2022 WL 767573, at *11. This suit would be expensive to try given the complicated technical matters at issue, the anticipated length of the trial, the sensitivity of the documents, the complexity of discovery under potentially conflicting U.S. and Israeli legal regimes, and the likely media interest. Transporting the necessary witnesses and evidence to California from foreign countries would be "inconvenient and expensive." *STM Grp., Inc. v. Gilat Satellite Networks Ltd.*, 2011 WL 2940992, at *9 (C.D. Cal. July 18, 2011). The trial would also come at a time when courts in this District are facing burdensome caseloads and substantial trial delays. As of March 31, 2023, the Northern District of California had almost 14,000 pending cases, and the median time from filing to trial for civil cases is more than three years. U.S. District Courts, *Federal Court Management Statistics—Comparison Within Circuit—During the 12-Month Period Ending March 31, 2023* (Mar. 31, 2023).[14] Plaintiff identifies no similar issues with Israeli courts.[15]

---

[14] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2023.pdf.

[15] Plaintiff's glancing reference to proposed judicial reforms and protests in Israel (Opp. 23) is feeble. As the article Plaintiff cites explains, the proposed reforms apply to the Israeli Supreme Court and the judicial appointment process, not to lower courts' consideration of routine lawsuits like Plaintiff's. Raffi Berg, *Israel Judicial Reform Explained: What Is the Crisis About?*, BBC News (July 24, 2023), https://www.bbc.com/news/world-middle-east-65086871. Plaintiff's bare

## IV.     PLAINTIFF DOES NOT STATE ANY CLAIM AGAINST NSO.

### A.     Plaintiff abandons his Alien Tort Statute claim.

Plaintiff's opposition nowhere addresses his Alien Tort Statute claim or responds to NSO's arguments for why that claim must be dismissed. By not responding, Plaintiff "has abandoned his claim." *Shiferaw v. City & Cty. of S.F.*, 2022 WL 1237895, at *15 (N.D. Cal. Mar. 30, 2022) (Seeborg, J.). For good reason: it is undeniable that an ATS claim cannot be brought against foreign corporations or be based on the conduct alleged in Plaintiff's complaint. (Mot. 15.)

### B.     Plaintiff does not plead $5,000 in damage or loss under the CFAA.

Plaintiff agrees he cannot sue under the CFAA without establishing that he suffered $5,000 in "damage" or "loss." 18 U.S.C. § 1030(c)(4)(A)(i)(I), (g). But Plaintiff does not identify *any* "damage" as the CFAA defines that term. He simply points to conclusory recitations of the CFAA's elements (Opp. 28 n.9 (citing Compl. ¶¶ 64-66)), none of which identify any "damage." Investigatory costs and harm to reputation, relationships, or goodwill (Compl. ¶ 64) are not "damage" because they are not "technological harms." *Van Buren v. United States*, 141 S. Ct. 1648, 1659-60 (2021); *see* Mot. 16, 24 (citing cases). The mere alleged "install[ation]" of "spyware" (Opp. 28 n.9) is also not "damage." *Calendar Research*, 2020 WL 4390391, at *22; *Goodman v. Goodman*, 2022 WL 17826390, at *7 (S.D.N.Y. Dec. 21, 2022). Plaintiff does not address these points. That alone requires dismissal of his claim under CFAA § 1030(a)(5), which specifically requires "damage." 18 U.S.C. § 1030(a)(5); *Calendar Research*, 2020 WL 4390391, at *15, 22; *Custom Packaging Supply, Inc. v. Phillips*, 2016 WL 1532220, at *4 (C.D. Cal. Apr. 15, 2016).

As for "loss," Plaintiff does not identify any *factual* allegations that he incurred at least $5,000 in loss. His bare assertion that he "incur[red] a loss … in an amount in excess of $5,000" (Compl. ¶ 63) is just a conclusory recitation of an element of his claim, which is not sufficient. *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *7 (N.D. Cal. Feb. 16, 2021); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949 (N.D. Cal. 2014).[16] And while he cites allegations

---

speculation that protests "could affect" those courts is unsupported conjecture. (Opp. 23.)

[16] This is not a requirement that Plaintiff plead loss "with specificity." (Opp. 29.) It is simply the basic Rule 8 requirement to plead "factual allegations" instead of "labels and conclusions."

mentioning a "forensic analysis" (Compl. ¶¶ 4, 7), he does not allege *he paid for* that analysis or that it cost *him* at least $5,000. To the contrary, even his one conclusory allegation states only that his $5,000 in loss "*include[s]*" investigatory costs. (*Id.* ¶ 63 (emphasis added).)[17] Plaintiff thus does not allege sufficient facts to establish $5,000 in loss.

**C.    Plaintiff cannot sue NSO under California law.**

California law does not apply in this case, where the alleged "wrongful act as well as the injury occurred outside California." *Arabian v. Sony Elec. Inc.*, 2007 WL 627977, at *9 (S.D. Cal. Feb. 22, 2007); *see* Mot. 18-20, 22-23. To argue otherwise, Plaintiff largely regurgitates arguments from the *WhatsApp* and *Apple* cases against NSO. (Opp. 29-30.) But Plaintiff cannot simply incorporate by reference allegations and arguments made in other cases by differently situated plaintiffs. *Corinthian Colls.*, 2012 WL 8502955, at *6. The plaintiffs in *WhatsApp* and *Apple* are both California residents, so even if those plaintiffs could invoke California law—which NSO does not concede[18]—the nonresident Plaintiff here cannot.

Plaintiff's allegations that NSO accessed California-based Apple servers—besides being inadequately pleaded—cannot trigger California law because the "level of contact created by the connection between an out-of-state defendant and a web server located within a forum" is "de minimis." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003); *see Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *6 (N.D. Cal. Nov. 20, 2020) (holding CDAFA did not apply to alleged hacking of foreign plaintiff's Bitcoin account even though account was based in California); *Sajfr v. BBG Comms., Inc.*, 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012) (holding California law did not apply to foreign "telephone calls" even though they

---

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

[17] That distinguishes *Ross v. AT&T Mobility, LLC*, in which the plaintiff alleged that "*he spent* in excess of $5,000 investigating who accessed his mobile device." 2020 WL 9848766, at *17 (N.D. Cal. May 14, 2020) (emphasis added and quotation marks omitted). Plaintiff here does not allege "that he spent money on services provided by other people." *Id.*

[18] NSO has argued Apple cannot sue NSO under California law, and the court has not yet resolved that issue. *Apple*, No. 3:21-cv-09078, Dkt. 48 at 12-15, Dkt. 51 at 7-9. The language Plaintiff quotes from *WhatsApp* (Opp. 30) has nothing to do with extraterritorial application of California law. 472 F. Supp. 3d at 673.

were "routed through switches in the United States" and "rated and billed from San Diego"). Indeed, Plaintiff cannot even base his CDAFA claim on any alleged access to Apple's California servers, because a CDAFA claim may only be brought by the servers' "owner or lessee." Cal. Penal Code § 502(e)(1). Plaintiff does not address this point except in connection with the *federal* CFAA, which is irrelevant to whether *California law* applies. (Opp. 30.)

### D.   Plaintiff's California law claims fail.

Plaintiff also does not plead the necessary elements of his California-law claims.

### 1.   Plaintiff states no claim for invasion of privacy.

Plaintiff does not plead invasion of privacy because he does not "allege *with specificity* the material in the content" of the communications he claims NSO accessed. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040-41 (N.D. Cal. Aug. 12, 2014). In response, Plaintiff simply repeats his complaint's generalized description of the communications. (Opp. 32.) As held in numerous cases—none of which Plaintiff addresses—that is not sufficient to state a claim. (Mot. 20-21); *see In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 816-17, 829-30 (N.D. Cal. 2020) (holding allegation that defendant intercepted "professional phone calls containing lots of private information" insufficient); *Scott-Codiga v. Cty. of Monterey*, 2011 WL 4434812, at *7 (N.D. Cal. Sept. 23, 2011) (dismissing privacy claim because plaintiff "has not alleged what [d]efendants disclosed to the public, nor has she itemized the specific private facts that were disclosed").[19]

### 2.   Plaintiff states no claim for intentional infliction of emotional distress.

Plaintiff cannot state a claim for intentional infliction of emotional distress because (among other reasons) he does not identify any "extreme and outrageous conduct." (Mot. 21-22.) Plaintiff offers no support for his theory that assisting an investigation by sovereign nations—here, the Netherlands and Italy—into the misdeeds of an Interpol-wanted criminal could be outrageous

---

[19] The cases Plaintiff cites are inapposite. *Int'l Fed'n of Prof. & Tech. Eng'rs, Local 21, AFL-CIO v. Super. Ct.*, 52 Cal. 4th 319, 330-31 (2007), held the financial information at issue did *not* fall within a reasonable expectation of privacy, which confirms the need for Plaintiff to identify the specific information he claims was accessed. The plaintiff in *Mintz v. Mark Bartelstein & Assocs.*, 906 F. Supp. 2d 1017, 1033 (C.D. Cal. 2012), identified the *specific information* at issue: "the terms of [his] employment …, including his compensation." Plaintiff alleges no such detail.

conduct. Although Plaintiff disparages those investigations, he does not claim they violated Dutch or Italian law, and he nowhere substantiates his assertion that they violated some unspecified "law of nations." (Opp. 33-34.) If Plaintiff's argument were correct, then everyone in the United States subject to a warrant-based wiretap could sue the government for emotional distress. That is not the law, which is why Plaintiff cites no case endorsing his position.

Plaintiff also does not plead the necessary facts about the "nature or extent" of his alleged emotional distress. *Bogard v. Emp'rs Cas. Co.*, 164 Cal. App. 3d 602, 617 (1985). He merely quotes, in a footnote, his complaint's conclusory recitation of the elements of his claim. (Opp. 34 n.13.)

### 3.    Plaintiff states no CDAFA claim.

Plaintiff does not state a claim under CDAFA for the same reason he cannot state a claim under the CFAA: he does not adequately plead that he suffered the requisite "damage" or "loss." Cal. Penal Code § 502(e)(1); *see* Mot. 23-24; *supra* 12-13.

### 4.    Plaintiff concedes conspiracy is not a cause of action.

Plaintiff concedes "civil conspiracy is not a cause of action." (Opp. 36 (quoting *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 947 (N.D. Cal. 2003) (cleaned up)).) Therefore, his claim for conspiracy must be dismissed "with prejudice." *AccuImage*, 260 F. Supp. 2d at 947. As NSO explained, moreover, Plaintiff's allegations do not establish a conspiracy. (Mot. 25.) In response, Plaintiff merely asserts that "all of the elements for civil conspiracy liability … have been sufficiently pled." (Opp. 36.) Such a "conclusory argument" cannot defeat NSO's motion. *RHUB Commc'ns, Inc. v. Karon*, 2017 WL 3382339, at *9 (N.D. Cal. Aug. 7, 2017).

## V.    CONCLUSION

The Court should dismiss Plaintiff's claims against NSO with prejudice.

DATED:  August 16, 2023                          KING & SPALDING LLP

                                                                   By: */s/Joseph N. Akrotirianakis*
                                                                         Attorney for Defendants
                                                                         NSO GROUP TECHNOLOGIES LTD.
                                                                         and Q CYBER TECHNOLOGIES LTD